UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21CR000CR0022 SEP (DDN) |
| | ) | |
| ANTONIO HUBBARD, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

1.   **PARTIES**

The parties are the defendant ANTONIO HUBBARD, represented by defense counsel Kevin Gau, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2.   **GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I, II, III, IV and V of the charge, the Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's distribution of fentanyl from November 6, 2018 through May 15, 2019, of which the Government is aware at this time.

1

Defendant Hubbard acknowledges that this disposition confers upon him the benefit of eliminating the 20-year mandatory minimum sentence that would be required were he to be convicted of Count I of the indictment as pled.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties recommend that defendant be sentenced in the range of 120-168 months. This recommendation shall be notwithstanding the application or non-application of any particular Sentencing Guidelines, including any Guidelines contemplated by this agreement.

The defendant also agrees, pursuant to the guilty plea to Counts I-V, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: (a) $12,781.00 in U.S. Currency; and (b) $3,707.00 in U.S. Currency.

**3.    ELEMENTS**

As to Counts I-IV, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, on or about November 6, 2018 (Count I), April 19, 2019 (Count II), April 25, 2019 (Count III), and May 9, 2019 (Count IV), all within the Eastern District of Missouri, the defendant distributed fentanyl, a Schedule II controlled substance, and;

*Two*, he did so knowingly and intentionally.

2

As to Count V, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, on May 15, 2019, within the Eastern District of Missouri, the defendant possessed fentanyl, a Schedule II controlled substance;

*Two*, he did so knowingly and intentionally; and

*Three*, at the time he possessed the controlled substances, he intended to distribute some or all of the fentanyl to another person.

4.   **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Victim J.L. (a paraplegic confined to a wheelchair) was found by his mother dead from a fentanyl drug overdose with a needle in his arm on November 9, 2018. The Medical Examiner concluded J.L. died as a result of acute fentanyl, hydrocodone, and ethanol intoxication.

Police officers who responded to the call conducted an investigation to determine the source of the fentanyl J.L. had used. Examination of J.L.'s telephone led them to interview an individual named R.F. R.F. identified defendant Antonio Hubbard as the person who sold J.L. and R.F. drugs on November 6, 2018. Video surveillance security video from J.L.'s apartment complex (where J.L. lived alone) showed that on November 6, 2018, R.F. picked up J.L. in a black Chrysler vehicle and dropped him back off a short while later. Between November 6 and 9, 2018, the only person who visited J.L. was his mother.

3

Based on the information that defendant Hubbard was responsible for distributing the controlled substances to J.L., the use of which caused J.L.'s death, investigators developed a confidential informant who was able to make controlled purchases of fentanyl from defendant Hubbard and who successfully introduced an undercover officer (UC) to Hubbard for the purposes of making fentanyl purchases. Hubbard sold fentanyl on April 19, 2019 (Count II), April 25, 2019 (Count III), and May 9, 2019 (Count IV).

On May 15, 2019, Hubbard and the UC had a planned transaction at the Galleria Mall. Instead of conducting the transaction, the UC ordered defendant Hubbard arrested at that location. Hubbard was in possession of 609 capsules of fentanyl and $3,707 in cash. Post arrest, Hubbard admitted being in possession of drugs when arrested and admitted having sold illegal narcotics to J.L. and R.F. in the past. Additionally, officers executed search warrants at locations where defendant Hubbard stayed. At his apartment on Olive Street, officers found drug paraphernalia, methadone and $12,781 in currency. The currency was located in a safe that also contained letters and mail addressed to defendant Antonio Hubbard.

The exact amount of fentanyl attributable and reasonably foreseeable to defendant Antonio Hubbard is not subject to precise calculation. The parties agree that defendant Hubbard is responsible for at least 400 grams, but less than 1.2 kilograms of fentanyl. This amount is substantiated by his distribution to R.F. and J.L., the controlled purchases of fentanyl from defendant, the fentanyl seized from defendant upon his arrest, the currency seized from him at the time of his arrest and at his residence at the time of the execution of the search warrant, which was proceeds and evidence of past distribution and his post-arrest statement admitting to fentanyl distribution.

4

5.    **STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than three years and not more than life. In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

6.    **U.S. SENTENCING GUIDELINES (2021 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a.    **Chapter 2 Offense Conduct**:

(1)    **Base Offense Level**:  The parties agree that the applicable base offense level is 30, as found in Section 2D1.1(c)(5). The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is at least 400 grams, but less than 1.2 kilograms, resulting in the agreed Base Offense Level.

(2)    **Specific Offense Characteristics**:  The parties do not foresee the applicability of any specific offense characteristics.

b.    **Chapter 3 Adjustments**:

5

**(1)** **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.   If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

**c.** **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

**d.** **Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 27.  Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  The defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**The parties further agree that in light of the applicable statutory sentencing factors and the fact that J.L. died as a result of using fentanyl distributed by defendant Hubbard, the appropriate sentence in this case is no lower than 120 months and no higher than 168 months, notwithstanding the application or non-application of any sentencing guideline, and irrespective of the base offense level or total offense level as to any of the counts.**

**e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.   The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:**   The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

7

(2) **Sentencing Issues:** In the event the Court accepts the plea and sentences defendant to a total aggregate term of 120-168 months, both parties waive their rights to appeal **all** sentencing issues, including Criminal History.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant

will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**d.  Mandatory Special Assessment**:  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention**:  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines and Costs of Incarceration and Supervision**:  The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g.  Forfeiture**:  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice.  By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to

9

contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: (a) $12,781.00 in U.S. Currency; and (b) $3,707.00 in U.S. Currency.

The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

9.   **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS**

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.   CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.   NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

6/24/22
Date

TIFFANY G. BECKER
Assistant United States Attorney

6/15/22
Date

ANTONIO HUBBARD
Defendant

6/16/22
Date

KEVIN GAU
Attorney for Defendant

13